[Civil No. 1449. Filed April 6, 1916.]

[156 Pac. 961.]

THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a Corporation, Appellant, v. E. M. CARROW, and IRA M. GEORGE, Partners Doing Business Under the Firm Name of CARROW & GEORGE, Also Named as WALLAPAI MOUNTAIN CATTLE COMPANY, Appellees.

RAILROADS—KILLING STOCK.—Plaintiffs, partners, sued a railroad for the negligent killing of their livestock, range animals, by running locomotives, cars and trains over them; the specific acts of negligence being charged to have arisen from the road's failure to maintain sufficient fences and by its negligent operation of its trains. *Held*, that judgment for plaintiffs would be reversed, and the cause remanded for new trial.

[As to failure of railroad to comply with fencing statute as negligence, see note in **Ann. Cas. 1912D, 1106.**]

APPEAL from a judgment of the Superior Court of the County of Mohave. Carl G. Krook, Judge. Reversed and remanded.

Mr. Paul Burks and Mr. F. J. Heid, Jr., for Appellant.

Messrs. Clark & Clark, for Appellees.

CUNNINGHAM, J.—The appellant's objections to the sufficiency of the complaint are without merit, and raise no novel questions. We doubt if another complaint will again be presented to the court following the form of this complaint, yet, it states facts sufficient to constitute a cause of action.

The cause of action is based upon the defendant's alleged negligent killing of plaintiffs' livestock, range animals, by running locomotives, cars or trains over such animals. The specific acts of negligence relied upon are charged to have arisen: First, from defendant's failure to maintain sufficient fences to prevent the livestock from straying on to the railroad track, as set forth in the first count; and, second, by

defendant's negligent operation of its trains, as set forth in the second count.

Such double charge of negligence is a usual method employed of pleading negligence to meet the possible turn of the evidence, on the trial, and avoid a variance. The complaint is sufficiently definite and certain for such purpose, and states a cause of action for the negligent destruction of plaintiffs' property by the defendant, and is not open to the objections urged.

The ten separate animals claimed to have been killed constitute the ultimate claim. The several animals are alleged to have been killed at different times and places. Their aggregate alleged value constitutes the amount in controversy, and limits the jurisdiction of the courts to entertain the action. In this respect, the several claims are, for the purpose of conferring jurisdiction, similar in nature to the items of an account. Each item of an account may become a separate cause of action, but when a number of items are consolidated into one claim, such consolidation has not usually been considered a joinder of several causes of action. By analogy, we may justly reason that a consolidation of these ten several claims in one action, claiming the aggregate sum, is for jurisdictional purposes likewise one cause of action.

The defendant controverts the existence of a partnership between the plaintiffs, and denies the right of the plaintiffs to sue in the capacity of partners, and denies as follows:

"And defendant denies, upon information and belief, that plaintiffs were, or that either of them was, the owners, or owner, at any of said times of all or any of the animals described in said complaint. . . . "

Upon this issue of fact, the plaintiffs offered substantial testimony to prove that they were partners, and that they owned each of the animals described in the complaint, and no evidence to the contrary appears in the record.

The decisive questions involved on this appeal are raised by appellant's assignments of error, which are concisely stated in the eighth paragraph as follows:

"The evidence is insufficient to support the judgment for the reason that there was no evidence introduced upon the trial which warranted the trial court in finding that defendant killed any or all of the cattle described in plaintiffs' com-

plaint, or that it negligently killed any of such cattle, or that
its road was unfenced, or that plaintiffs were damaged by
reason of any act of neglect of this defendant.''

Paragraph 3779, Civil Code of Arizona, 1913, declares
that the corporation ''shall be liable in damage . . . to the
owner of such livestock,'' killed by its locomotives, cars
and trains at portions of its track unfenced.  Clearly, this
liability is based upon the corporation's failure to per-
form a duty owing to livestock raisers, to the end that live-
stock running upon the open range, crossed by the railroads,
may be protected from injury from the running of locomo-
tives, cars and trains in the prosecution of the corporation's
business.  A failure by the railroad corporation to perform
such duty is, by the statute, negligence, as a matter of law.
Livestock killed or injured by the railroad's locomotives, cars
or trains at portions of the railroads unfenced are presumed
as a matter of law to have been negligently killed.  To justify
such presumption, plaintiff must bring his case within the
specified conditions.

The facts stated in the complaint, we have decided, are
sufficient to set forth such cause of action.  The defendant
raises the issues, that the animals, if killed, were so killed by
defendant at portions of its road which the law prohibits
it from fencing; and that it denies that its locomotives, cars
or trains killed the animals described in the complaint.

Paragraph 3769, Civil Code of Arizona, 1913, requires:

''Every railroad corporation, in fencing its line or road''
to ''leave an opening at least once in every three miles, in
an accessible place for stock to pass through, and such open-
ing to be at least sixty feet wide, with cattle-guards at each
end, and fences run to guards so as to prevent cattle going
on to the inclosed track.''

Such requirement to leave openings is in substance re-
peated in paragraph 3770, and paragraph 3771 requires the
railroad company to leave unfenced any place wherein the
said railroad runs over any trestle or bridge that is sufficiently
high for cattle to go under the same.  Paragraph 3772 pre-
scribes a penalty for a violation by the corporation of the
preceding paragraphs.

By the defendant's denial, an issue was joined, but no
evidence bearing on the issue was offered, nor received, and

it requires no further notice in this case. The burden is on the plaintiffs to allege and prove that the railroad company actually killed or injured "any horse, mare, gelding, filly, jack, jenny or mule, or any cow, heifer, bull, ox, steer, or calf, or any other domestic animal by running any engine or engines, car or cars over or against any such animal." Such fact of killing is *prima facie* evidence of a negligent killing or injury of such animal on the part of the company, and places the company upon its defense. Paragraph 3780, Civil Code of Arizona 1913.

The plaintiffs, in support of their cause and to maintain the burden of proving their case, must satisfy the court from a preponderance of the evidence that the animals were killed by defendant's locomotives, cars or trains running over them, and thereby present a right to recover, because from the fact of killing or injury of the animals by the railroad company's locomotives, cars or trains, the law *prima facie* presumes that the company was negligent in killing or injuring such animals. The presumption of negligence in such case is open to rebuttal by the company by proper defense and evidence of due care—absence of negligence on the part of the company.

If plaintiffs plead and prove by competent evidence to the satisfaction of the court or jury the additional fact that the place on the company's track where the animals were killed or injured was unfenced, at the time of such injury or killing, then the act of killing or injury was negligence as a matter of law, from which the company cannot escape liability, unless it affirmatively pleads and proves that the unfenced portions of its track, the scene of the killing or injury, are such portions as the law prohibits it from fencing within paragraphs 3769, 3770 or 3771, Civil Code of Arizona of 1913: or "unless it be shown on the trial of any action instituted for the recovery of such damages, that the owner of such livestock, his agent or servants, immediately contributed to such killing or injury; the mere straying of livestock upon unfenced portions of such railroad shall not be held upon the trial of causes brought under this chapter to be any evidence of contributory negligence on the part of the owner of such livestock nor shall the grazing of the same unattended

by a herder be so considered.'' Paragraph 3779, Civil Code of Arizona 1913.

(The writer of this solution has an individual opinion that the railroad company would be permitted to further show in way of partial defense to such action, that the animal when killed by some person unknown to the company was securely tied between the rails at a point on the track required by law to be fenced, and remained so securely tied until it was killed, injured or knocked off the right of way, by a passing locomotive. But he can conceive of no escape for the company in a case such as this through evidence other than above specified as supposed. It is conceded that this individual opinion is not necessary to a decision of this case, and is therefore thrown in for good measure, *gratis.* This question is privately referred to because appellant contends that plaintiffs failed to offer evidence relating to fences, and for that reason have failed in proof.)

If defendant is to be held liable, its liability must rest upon the sole fact that its locomotives, cars or trains, or all, killed or injured livestock owned by the plaintiffs, by running over or against them. In other words, plaintiffs rely solely upon a condition of fact presenting a *prima facie* case. In support of this issue one of the plaintiffs testified to the effect that the carcass of one red heifer was found near the track on November 14, 1912. The market value of this animal is fixed at $30. On March 1, 1913, the carcass of one cow, of the value of $30, was found from 75 to 100 feet from defendant's track. Also, on the same date, near the same point, the carcass of one red heifer was found near said track, 75 to 100 feet distant. The value of such animal was fixed at $25. Also, on the same date near the same point, the carcass of one red cow was found dead along the defendant's right of way. The value of such animal was fixed at $30. The other plaintiff testified that he saw the carcass of a dead bull, belonging to plaintiffs, lying along defendant's right of way, about April 19, 1913. It had just been killed. The value of such animal is fixed at $75.

Plaintiffs introduced the testimony of yet another witness, tending to show that on the fourth day of December, 1912, witness found the dead carcass of a red cow, lying about

50 yards from defendant's railroad track. She had been killed and dragged from the track. This animal was shown to be of the value of $30. The evidence was without conflict to the effect that the six described animals belonged to plaintiffs. The plaintiffs introduced testimony, over the objection of defendant, tending to prove that the section foreman in the employ of defendant company had informed plaintiffs in answer to questions asked him, and by his record of livestock killed, that the defendant's locomotives, cars and trains had killed the above-mentioned animals. The plaintiffs offered no testimony other than statements made by such section foreman, and the contents of the foreman's section record to show that a heifer valued at $28, and a red cow, valued at $30, were found dead near defendant's railroad track on February 2, 1913, and that a red steer valued at $28 was found dead near defendant's track on March 24, 1913, and that a heifer of the value of $25 was killed and found near defendant's railroad track on March 29, 1913. No witness for plaintiffs claimed to have seen the carcasses of such animals at any time. They relied solely upon the section foreman's record for that fact.

The plaintiffs' witnesses testified that the section foreman told the witness that the trains had killed the several described animals at times shortly after the animals had been killed, and shortly before a record had been made of such killing. The plaintiff Carrow stated the contents of the section foreman's livestock record from memory, or from a copy of the record made by himself, or from a copy of such copy made by plaintiff George and compared at times with the record, and at other times with the copy made from the record. Upon this testimony a substantial portion of the full amount of the judgment rests for a support. The defendant offered no testimony, but relied upon failure of plaintiffs' proof.

The statements made by the section foreman are hearsay, in the most offensive sense of the hearsay rule, and where objected to on that ground such hearsay evidence cannot be considered competent evidence sufficient to support the entire judgment. With the hearsay evidence excluded, and it was error to give such evidence any weight, the record is without direct evidence to the fact that the defendant's

trains killed any of the animals.   One circumstance remains in evidence tending to prove that defendants trains killed the six animals first above mentioned.   Such circumstance is that carcasses of such animals were shown to have been found near the track, and in one instance, on December 4, 1913, a witness testified to a carcass having been dragged from the track to a point about fifty yards distant.   That six dead animals were found near defendant's railroad track, on its right of way, is not disputed.   Therefore we may consider that circumstance established by direct evidence.   No reasonable conclusion can be drawn from such established circumstance, other than the conclusion that defendant's locomotives, cars or trains killed said six animals by running over, upon or against them.

The defendant's attorney at the trial inquired of the plaintiff George, while he was testifying as a witness in regard to finding the mangled carcass of the bull near defendant's track and near a wagon road along the track, whether witness thought an automobile following the wagon road may not have killed the bull.   The witness gave his opinion that he did not think an automobile would kill a bull weighing 1,400 pounds.   The witnesses were not asked whether they regarded it as possible that such six animals might have been killed by aeroplanes volplaning down along defendant's right of way, or by the animals running against a tree or telegraph post, or perhaps on account of the moulting season and rubbed the life out of themselves on the rails or ties. Falling meteors may have struck and killed some, or all, of them.   Lightning coming down with a snowfall could have killed them.   The writer of this opinion cannot now bring to his imagination any ways or means by which such six animals could have been killed on defendant's right of way, near the railroad track, other than above suggested, inquired about or repudiated with a plausible reason.

I believe no rule exists requiring the owner of livestock to prove by direct evidence that his animals have been killed by a railroad company's locomotives, cars or trains, but that the law permits such fact to be established by circumstantial evidence, with equal effect as when established by direct evidence.   Otherwise I am privately of opinion the cattle-raiser would be the loser when any animal may be killed by

the railroads unless he sends, with every bunch of his cattle released upon the open range, a chaperon, or an automatic camera, if such instrument exists, to furnish direct evidence of the tragedy. Even then the chaperon might leave the state and escape testifying, and the photographic plate or film would blur from the excessive Arizona sunshine, perhaps, and leave the cattle-raiser without direct evidence of his loss, except the dead carcasses strewn along the right of way, and the section foreman's record of the tragedy.

The importance of the section foreman's record can best be appreciated from an understanding of the statute requiring such record to be made and kept. Paragraph 3768 of the Civil Code of Arizona of 1913 provides:

"Hereafter it shall be the duty of all railroad companies in this state to require all section foremen, or persons discharging like duties, while in their employ and service as such, to keep at the section-house a specific record upon forms furnished by said board [livestock sanitary board] of all stock killed or crippled upon their respective sections of such railroad, giving age, color, sex, marks and brands of all such stock so killed or crippled, which record shall be open and free for inspection by the public at reasonable times."

This statute was amended by the Second State Legislature at its First Regular Session by chapter 10, approved February 26, 1915, but the amendment consists of prescribing additional duties to be performed, and in no apparent manner affects the above portion of the statute, which was re-enacted in full, and was the only statute on the subject in force when this matter arose.

The section foreman's record required to be kept, is essentially a public record of current events of the nature specified. The section foreman must record such specific facts as a duty of his employment, and that record must be kept "at the section-house." The "record shall be open and free for inspection by the public"; therefore such record is a public record and the section foreman is its legal custodian while so employed. The railroad company may not remove such record from the section-house, nor exercise any authority over it other than may be exercised by any member of the public. It is true this statute requires the railroad company to cause the record to be made and kept, and such record may become

damaging evidence against the company and in favor of some member of the public, yet the record is a public record, and the section foreman who makes the record is, while so doing, serving the public in the capacity of a public officer by force of his employment as section foreman. In performing the duty of recording the facts and keeping such record, the section foreman is made a public officer in possession of a public record. The clear purpose of keeping such record is to erect a permanent unchanging monument to the facts, thereby removing the temptation to distort the facts to the advantage of anyone concerned. The record must be considered as evidence of the facts contained that the law requires to be recorded.

The statute requires the record to be kept at the section-house of the section of which it is a record, consequently neither the railroad company nor the public may remove such record from the section-house for private purposes. It must remain at the section-house for public purposes.

The plaintiffs were permitted to introduce evidence, against the objections of the defendant, of the contents of the section foreman's record. The witness was permitted to testify that witness examined the said record, and made notes of its contents, as it had reference to all of the ten animals described in the complaint, and then was permitted to testify concerning the contents of the said record from the notes made of such contents. Defendant objects to such manner and means of proving a record. The statute, requiring such record to be made and kept, does not prescribe any particular method by which the record or a copy may be in court for use as evidence. To be so used, we must look for a rule elsewhere. Before any record may be so used, it must be authenticated in a manner recognized by law.

"Copies of the records of all public officers and courts of this state, certified to under the hand and seal (if there be one) of the lawful possessor of such records, shall be admitted as evidence in all cases where the records themselves would be admissible." Paragraph 1739, Civil Code of Arizona 1913; paragraph 2541, Revised Statutes of Arizona 1901.

This statute by its terms is sufficiently broad to comprehend within its scope the section foreman's record, and certainly the record itself, when legally authenticated, would be

admissible in this case. The secondary evidence of the contents of the record as offered and introduced by the plaintiffs was not sufficient to admit the record for any purpose, and, as admitted, furnished no support for a judgment based thereon.

The court erred in receiving or considering such testimony of plaintiffs relating to the contents of the section foreman's record. In the absence of such illegal evidence no competent evidence was introduced from which the trial court is authorized to draw the conclusion that the said four animals were killed by the defendant's locomotives, cars or trains. The secondary, hearsay evidence referring to the contents of the section foreman's record was incompetent for that purpose, and must have been considered by the trial court as sufficient; hence the error resulted.

The judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.

ROSS, C. J., and FRANKLIN, J., concur in the order reversing the cause and remanding it for a new trial.