[Civil No. 1450.   Filed April 14, 1916.]

[156 Pac. 965.]

THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a Corporation, Appellant, v. E. M. CARROW, J. E. CARROW and F. E. CARROW, Partners Doing Business Under the Firm Name and Style of CARROW BROTHERS, Appellees.

1. PARTNERSHIP — ACTIONS — PLEADING PARTNERSHIP.—Where partners sue, a complaint not alleging partnership except in its title is defective, although sustainable against a general demurrer.

2. ACTION—SEPARATE CAUSES OF ACTION.—A complaint which, although describing several causes of action as one, states them separately, although not stating at the beginning of each cause the corporate or partnership capacity of the parties, is informal, but not demurrable for misjoinder of causes of action.

3. RAILROADS — INJURIES TO ANIMALS — ACTIONS — PRESUMPTION.—By the terms of Civil Code of 1913, paragraph 3780, the killing or injury of a domestic animal by being run over by an engine or car is *prima facie* evidence of negligence of the railroad company.

4. EVIDENCE—DOCUMENTS—RAILROAD RECORDS OF STOCK KILLED.—The record of stock killed or crippled by railroads on each section, required by Civil Code of 1913, paragraph 3768, to be kept at section-houses for public inspection, is competent evidence in an action for such killing, both as an admission and as a memorial of the facts kept under the requirements of law.

5. EVIDENCE—SECONDARY EVIDENCE.—A witness cannot testify to the contents of a record required to be kept by Civil Code of 1913, paragraph 3768, as to stock killed, without first proving its loss, destruction or his inability to produce.

6. WITNESSES—TESTIMONY—REFRESHING MEMORY.—The use of a memorandum, made in part from the record of another, to refresh the witness' memory, is error, being an invasion of the rule against secondary evidence.

7. EVIDENCE—ADMISSIONS OF SECTION FOREMAN.—As Civil Code of 1913, paragraph 3768, requires him to keep a record of stock killed, a section foreman's statement that stock was killed by the railroad is an admission of the railroad company.

[As to right of witness to use memoranda to refresh and assist memory, see notes in 98 Am. Dec. 619; 35 Am. Rep. 56.]

APPEAL from a judgment of the Superior Court of the County of Mohave. Carl G. Krook, Judge. Reversed and remanded.

Mr. F. J. Heid, Jr., and Mr. Paul Burks, for Appellant.

Messrs. Clark & Clark, for Appellees.

ROSS, C. J.—The appellees sued the appellant for the value of twelve head of cattle alleged to have been killed by appellant's train. The allegations of the complaint are:

"Come now the plaintiffs above named and for *cause of action* against the defendant allege."

Then follows, in paragraph I, statement of the residence of the plaintiffs, the corporate capacity of the defendant and its business of operating a railroad in Mohave county, Arizona. Paragraph II and each subsequent paragraph, down to and including the thirteenth paragraph, alleges the killing of

a different animal belonging to the plaintiffs "by reason of defendant's negligence and carelessness in failing to maintain along its right of way a good and sufficient fence or other barrier sufficient to turn livestock." Each paragraph prays for judgment for the value of the animal described therein as killed. This is followed by a prayer for the total damage alleged to have been sustained. The complaint also alleges "for a second, separate and further *cause of action* against defendant, plaintiffs allege." And under this heading, in twelve separate paragraphs, they set forth the killing by defendant's trains the twelve head of cattle, being the same cattle as described in the forepart of the complaint and different from the forepart of the complaint only in this, that it is alleged that the defendant, "regardless of its duty in this respect, so carelessly and negligently operated and managed its trains, locomotives and cars that said trains, locomotives and cars ran upon, against and over, and thereby killed said cow so belonging to plaintiffs."

The defendant demurred to the complaint on the grounds: (1) That it failed to state facts sufficient to constitute a cause of action; and (2) on the ground of a misjoinder of causes of action in that the plaintiffs had attempted to join in one complaint twelve more or less separate alleged causes of action, not arising out of the same transaction, without separately stating them.

The point made under the general demurrer is that there is no allegation in the complaint that the plaintiffs were partners, it being contended that the statement in the title of the case to that effect is insufficient. In this respect the complaint is not what it should be. We think it is elementary that when two or more parties are suing, they should by positive affirmative allegations show their interest in and relation to the subject matter—good pleading demands as much. In this case, however, the demurrer is a general one, and as against a general demurrer, we think the complaint ought to be held to state a cause of action, especially in view of the fact that upon the trial, the evidence showed that the plaintiffs were in fact partners, and as such interested in the subject matter of the lawsuit.

The demurrer, upon the ground of a misjoinder of causes of action, was properly overruled. The fact that the plaintiffs described twelve causes of action as one cause of action did not change the situation. The killing of each animal being at a different time and place constituted a separate cause of action, and the plaintiffs so treated it in their complaint, for the facts relied upon by them in each case are separately stated and followed by a prayer for judgment. Doubtless the pleader would have exercised better taste and conformed more nearly to the rules of pleading had he at the beginning of each cause stated the plaintiffs' partnership and the defendant's corporate capacity, business and residence, or by appropriate reference made such allegations of the first cause of action a part of each subsequent cause; but the lack of these formalities could in no wise prejudice the rights of the defendant or embarrass it in the formulation of its answer.

In the trial of the case the plaintiffs, as their grounds of recovery, rely upon the careless and negligent operation of the trains as the cause of the accident in each case. However, no evidence whatever was introduced by the plaintiffs showing any negligence or carelessness upon the part of the defendant in the operation of its trains at the time the animals were killed. All of the evidence was directed toward showing that the defendant in the operation of its trains killed the cattle, and not that it was carelessly or negligently done. It was not attempted to prove any negligence upon the part of the defendant.

By virtue of paragraph 3780 of the Civil Code of 1913, it is contended that the fact of injury or death of the animal caused by the operation of a train or engine or car, being established, no other evidence is necessary to entitle a recovery. It is provided, among other things, in said section:

"The killing or injury shall be *prima facie* evidence of negligence on the part of such corporation or company."

The question therefore is: Was the evidence offered and introduced by the plaintiffs proper and competent evidence to establish the fact of the killing of the animals by the defendant in the operation of its trains, and if proper and competent, does it sustain the judgment?

The defendant contends that the court erred in the admission of certain evidence: J. E. Carrow, a witness on behalf of plaintiffs, testified that he found, along the line of defendant's railway track, ten of the animals alleged to have been killed by the defendant; he identified them by the brands and marks as the property of the plaintiffs. After finding the different dead animals he testified to going to the section foreman and asking the latter if he had made a record of such animals. The section foreman answering in the affirmative, he then examined the record. While testifying he used a memorandum made up, as he says, from his personal examination of the animals and from the record of the section foreman. We give one of the questions and the objections interposed thereto:

"Q. You may describe the animal found dead near milepost 472.

"Mr. Heid: I object to the witness referring to the memorandum. It is not the best evidence. It is a copy of some sort of a report."

The objection was overruled, and the witness permitted to answer the question. The answer given was:

"It was a cow and I found she was dead, lying along the track. I rode a good deal, and as I passed along the railroad track about this point I saw this cow laying there and found she was mine, or belonged to Carrow Bros.; so I went to the section-house and asked for the books from the section foreman. After I looked the record over I asked if the cow was killed on such and such a date, and he said she was."

The defendant moved to strike, "what some section foremen told him, upon the grounds that it is incompetent, irrelevant, and immaterial for the reason that it has not been shown that such person was the agent of the defendant company, or if he was such agent, it is not shown that he had authority to bind the company, and had, in fact, no such authority, and such statement is hearsay." This motion was denied.

The same character of evidence and the same objections were made as to each cause of action. In the objections are involved the propositions as to whether the record kept by the section foreman is the best evidence of the things therein stated as suggested by defendant; and as to whether the sec-

tion foreman in finding and in making up his record of stock killed by the defendant's trains was an agent of the defendant with authority to bind the company.

Our statute (paragraph 3768, Civil Code 1913) provides:

"Hereafter it shall be the duty of all railroad companies in this state to require all section foremen, or persons discharging like duties, while in their employ and service as such, to keep at the section-house a specific record upon forms furnished by said board, of all stock killed or crippled upon their respective sections of such railroad, giving age, color, sex, marks and brands of all such stock so killed or crippled, which record shall be open and free for inspection by the public at reasonable times."

Owing to the sparsely settled condition of the grazing country in Arizona and the wide extent of territory over which range cattle graze and roam, it is not within human possibilities for the owner of livestock injured or killed by the operation of trains to discover or produce evidence of the manner in which the injury occurred, except through the employees of the railroad company. It is hardly possible that a train or engine could run into and kill or injure an animal without the company operating the road coming into the possession of the facts. The engine-man would certainly know if he killed an animal by running into it, when he did so and where; and the section foreman, whose duties require him to pass frequently over the line of track in his section, would also early discover the carcass of any animal killed by a passing train. Nothing short of a daily ride of the line of the railroad track would suffice to inform and protect the owner of stock, and should he find an animal injured or killed his knowledge would not extend to the manner in which it happened. Indeed, while the fact of the carcass of the animal being found near the railroad track with the injuries and bruises thereon might cause him to conclude that the animal was killed by the train or engine, he could not with absolute certainty say so.

It was in view of all these circumstances that the legislature enacted paragraph 3768, *supra*. A record of stock killed or crippled in the operation of its trains and engines was required to be kept at the section-house, to which place stock owners might repair and secure the information of

stock killed or crippled. It will be noticed that the law does not make the record to be kept by the section foreman evidence in a judicial proceeding. The best or primary evidence that the animal was killed or crippled by the railroad would not be a memorandum of its age, color, sex, marks and brands, but witnesses who saw the animal killed or crippled, or who saw it immediately after the injury and viewed the premises and its condition. The fact and not the record of the fact of the crippling or killing of an animal, would be the best evidence.

The record of killed and crippled animals required to be kept by the section foreman was not, therefore, the best or primary evidence of the things therein recited. That does not mean, however, that the record may not be used as evidence against the railroad company in a contest for damages for such killing or crippling. As we shall attempt to show later on in this opinion, the section foreman, in making the record of an animal injured or killed, acts as the agent of the railroad company, and in the exercise of a duty imposed upon him by law. His act in making the record then would be an act of the defendant company. It would be competent evidence not because it is the best or primary evidence, but upon the ground that it is a memorial of one of the ultimate facts to be proven, kept under the forms and requirements of the law. It being in writing, the record itself should be produced, or its loss or destruction accounted for, before oral evidence of its contents should be permitted.

If the law required the section foreman to notify by letter the owner of stock injured · or killed and, in pursuance of that duty, he had written plaintiffs, stating that a railroad train of defendant had killed an animal, giving its age, color, marks and brands, the letter itself in a trial between plaintiffs and defendant would become competent evidence as an admission. We think the record required to be kept by the section foreman should be regarded in the same light. It was competent for the witness to testify that the section foreman had kept a record and that he had seen the same, but beyond that he could not go without first making proof of its loss, destruction or his inability to produce.

The use of the memorandum, made in part from the section foreman's record, to refresh the witness' memory was

error, not perhaps of sufficient moment to require a reversal
of the judgment, except for the fact that the parties have
stipulated that the decision of this cause should abide the
judgment rendered in the case of *Atchison, Topeka & Santa
Fé Ry. Co.* v. *E. M. Carrow and Ira M. George, ante,* p. 83,
156 Pac. 961, being cause No. 1449, just decided.   It is not
shown whether much or little of the data contained in the
memorandum was taken from the section foreman's record,
but that some of it was is unquestioned.   This was an inva-
sion of the rule of evidence forbidding the use of secondary
evidence when the best evidence may be had.

The witness Carrow testified that he saw ten of the dead
animals along the track of railway of defendant, also that
the section foreman informed him that they had been killed,
and that he had made a record thereof.   It is vigorously
and earnestly contended by counsel for defendant that these
statements by the section foreman were not within the line
of his duty and were made without authority from defend-
ant, and that defendant is not bound by them.   To that point
they cite a number of cases.

In *Wall* v. *Des Moines & N. W. Ry. Co.,* 89 Iowa, 193, 56
N. W. 436, it is said:

"Plaintiff was permitted to prove, against the objections
of defendant, certain statements of a section boss in regard
to the death of the colt, the disposition to be made of it, and
in regard to arbitration. . . . The statements thus proven
were not a part of the *res gestae,* and were not, *so far as is
shown,* authorized by the employment of the persons who
made them."   (Italics ours.)

*Halverson* v. *Chicago, M. & St. P. R. Co.,* 57 Minn. 142,
58 N. W. 871, was for the recovery of damages for the negli-
gent killing of two colts by the railroad company.   Plaintiff
was allowed to testify that the section boss told him that the
colts were worth $75 apiece.   This was held as error, the
court saying:

"It cannot be presumed that a section boss has any more
authority than what is necessary for the discharge of the
duties ordinarily belonging to his position. *If he had any
further authority, it should be proved by competent evi-
dence."*   (Italics ours.)

We agree entirely with the principle announced in these cases. It is certainly true and universally conceded, so far as we know, that the agent cannot bind the principal when acting outside of his authority. The converse of that proposition is equally as well settled; that is, the principal is bound by the acts and declarations of the agent when acting within his delegated authority.

It is common knowledge that the ordinary duties of a section foreman do not extend beyond the caring for and repairing of the particular division of a line of railway track and to direct the work of section-men under him. This does not mean, however, that the railroad company or the law may not place upon him other and additional duties. Under paragraph 3768, *supra*, by virtue of his position as section foreman, he is required to and, therefore, owes the duty "to keep . . . a specific record . . . of all the stock killed or crippled upon their respective sections of such railway." This duty he owes to the railroad company and to the general public. It involves the duty to inspect his section of railroad for the purpose of discovering animals injured or killed, the duty to examine such animals for the purpose of ascertaining the cause of injury or death, and for age, color, sex, marks and brands.

In this case the section foreman, in the discharge of his duty, and in the line of his authority, discovered ten animals killed by the defendant railroad company, and he so told witness Carrow. We think he was acting in the line of duty when he made the discoveries, and that his admissions were in law the admissions of the defendant of one of the ultimate facts in controversy, and proper for the court to consider and weigh in arriving at a verdict. The court did not commit error in overruling defendant's motion to strike Carrow's answer.

The fact that defendant killed the animals sued for, we think, was established by plaintiffs. In the absence of a showing arising out of the evidence of the plaintiffs or by evidence on the part of the defendant, that the defendant was in the exercise of ordinary care in the operation of its trains at the time that the animals were killed, the plaintiffs, under the law, are entitled to recover upon the mere fact of the killing when established. The killing or the injury under our

statute having been established, the plaintiffs made out a *prima facie* case, and the burden of showing the want of negligence or the exercise of ordinary care on the part of the company was upon the defendant. The states of Alabama, Arkansas, Florida, Georgia, Iowa, Kentucky, Mississippi, North Carolina, North Dakota, South Dakota, Texas and Washington have adopted statutes like ours in that respect, and the courts in those states have adhered to the rule laid down in the statute.

To entitle the plaintiffs to recover, it was not necessary that they prove that their stock was negligently run into and killed, as the law supplies the element of negligence to the extent of making for them a *prima facie* case. Without this statutory provision it would have been incumbent upon the plaintiffs to prove by a preponderance of the evidence that the defendant negligently killed their stock. Notwithstanding the statute, the defendant railroad company was only required to exercise ordinary care and caution in the operating of its trains, and if, in the exercise of such care and caution, the plaintiffs' cattle were killed, it would not be liable. Upon that issue it offered no evidence. It did not show or attempt to show any fact or circumstances exempting it from liability.

For the error in the admission of evidence and because of the stipulation above referred to, the judgment is reversed and the cause remanded for a new trial.

FRANKLIN, J., concurs.

CUNNINGHAM, J. (Dissenting).—The appellees seek to recover the value of twelve head of livestock belonging to them as partners, alleged to have been killed by appellant's locomotives, cars and trains running over, upon and against such animals. The dates upon which each animal is alleged to have been killed, a description of such animal, and the point on appellant's railroad where each animal is alleged to have been killed, are all made specific, and in each instance the value of the animal is alleged. The aggregate value is set forth as $485, and judgment in that sum is demanded. The dates mentioned, upon which the animals are alleged to have been killed—the earliest is on June 15, 1913, and the

latest October 7, 1913, and the others on intermediate dates—specifically appear. The complaint sets forth the negligence relied upon as a cause of action by means of two counts, the first setting forth, as the negligence of defendant, its failure to fence its railroad, and that as a result the animals strayed upon the track and were killed; the second setting forth that the animals were killed by reason of the careless and negligent operation of defendant's locomotives, cars and trains. The defendant denied negligence on its part, squarely raising an issue upon both counts of the complaint.

Questions upon the pleadings and on the introduction of evidence were raised, but they are not now earnestly pressed upon our consideration, and I think, upon consideration, they do not merit a reversal of the judgment, for the reasons I have stated in my opinion in *A. T. & S. F. Ry. Co.* v. *Carrow & George,* decided April 6, 1916. The cause was tried to the court, a jury having been expressly waived. Judgment followed for plaintiffs in the sum of $425. From this judgment defendant appeals.

The appellant earnestly and ably presses upon our attention the question of the sufficiency and competency of the evidence to sustain the judgment. A review of the record discloses that plaintiffs introduced one witness and rested their case on the testimony given by such witness. The defendant introduced no testimony, but relied upon plaintiffs' failure of proof. The only question we have for consideration is whether any substantial evidence exists in the record supporting the allegations of the complaint.

J. E. Carrow, one of the plaintiffs, testified as a witness in behalf of plaintiffs. This witness testified that he personally saw ten of the carcasses of the animals described in the complaint, each lying in close proximity to the defendant's railroad tracks, and in one instance saw a train strike and kill one of the animals. He testified that at the points where he saw at least two of the dead animals, the track was unfenced. After seeing each animal dead, witness went each time and examined the section record of livestock killed, and conversed with the section foreman. In a number of instances, perhaps at all of such times, the section foreman informed witness of the number of the train which killed each animal, and the witness also testified that the section

record set forth the number of the train, the description of the animal killed, and other like facts. The witness testified to the value of each animal and to the fact that plaintiffs were the owners of the ten animals.

When such witness closed his testimony, direct and cross, and had been excused, the plaintiffs moved to amend their complaint by striking the items numbered 4 and 5, which motion was granted, and plaintiffs dismissed their claim for $60, for a cow alleged to have been killed on June 29, 1913, of the value of $30, and of another cow alleged to have been killed on July 2, 1913, of the value of $30.

In my opinion in *Atchison, Topeka & Santa Fé Ry. Co.* v. *Carrow & George,* I have endeavored to show that the fact of the killing of livestock by a railroad company may be established by circumstantial evidence, and that the fact the dead carcasses of animals are found along a railroad track, their killing having been otherwise unaccounted for, justifies the inference that such animals were killed by passing trains, cars or locomotives striking them—that such circumstance establishes the owner's *prima facie* right to recover, and puts the corporation on its defense, on authority of paragraph 3780 of the Arizona Civil Code of 1913.

The evidence in this case is stronger for the appellees than appeared in the Carrow & George case, in the particular that some of the animals are shown by the evidence to have been killed at portions of the track left unfenced. As a matter of law, the railway company was negligent in such instances, as explained by me in the Carrow & George case, it making no defense.

The court erred in admitting the hearsay statements of the section foreman, and such error would be presumed to have prejudiced the appellant's rights if a jury had been made the triers of the facts; but the facts having been tried by the court, in support of the judgment, we must presume that the court disregarded such illegal evidence. The competent evidence in the record is alone sufficient to sustain the finding of facts which sustain the judgment rendered.

The majority of the court holds that while the use of a memorandum by a witness, made in part from the section foreman's record, to refresh the witness' memory was error, "not perhaps of sufficient moment to require a reversal of

the judgment, except for the fact that the parties have stipulated that the decision of this cause should abide the judgment rendered in the case of *Atchison, Topeka & Santa Fé Ry. Co.* v. *E. M. Carrow and Ira M. George, ante,* p. 83, 156 Pac. 961, being cause No. 1449, just decided.'' The said stipulation is as follows, omitting the title:

"It is hereby stipulated by and between the parties to the above-entitled action that whatever judgment is rendered by the above-named court in the case of *The Atchison, Topeka & Santa Fé Railway Company, a Corporation, Appellant,* v. *E. M. Carrow and Ira M. George, Partners, Doing Business Under the Firm Name and Style of Carrow & George, and Also Named as Wallapai Mountain Cattle Company, Appellees,* now pending in the above court, numbered 1449, may be entered in the above-entitled cause by the above-named court, upon motion of either party. It is further stipulated that neither of the parties hereto need file any brief in the above-named court in support of this appeal, or take any further steps to prosecute, perfect or resist said appeal, which may, in order that time, trouble and expense to both parties may be saved, abide the result in said cause No. 1449. [Signed by the attorneys for the respective parties.] ''

No motion for judgment has been made in this case by either party. No judgment was rendered in case No. 1449, except an order reversing the judgment in that case.

The appellant submitted this case at the same time cause No. 1449 was submitted. The writer hereof, in cause No. 1449, discussed and carefully considered all the questions presented by the record in that cause, and that are presented by the record in this cause, and after stating his reasons, concluded such stated reasons did not justify a reversal of the judgment in that cause. The further fact is presented by the record in cause No. 1449, not presented by this record, viz.: That the record in cause No. 1449 contained no competent evidence tending to show or showing that 4 of the claimed animals were killed by the defendant railroad company; that the plaintiffs relied upon hearsay evidence to support the facts constituting negligence, and the court erred in admitting such evidence in the case and giving such evidence any weight; and therefore a material portion of that judgment had no substantial evidence in the record in its

support, and, as a necessary consequence, the judgment was wrong.

The particular error controlling the decision in cause No. 1449, reversing the judgment, is absent from the record in this cause. In cause No. 1449 the majority of the court, in their opinion, state no reasons whatever for the court's decision in that case. The entire opinion is as follows:

"We concur in the order reversing the cause and remanding it for a new trial."

Why the majority of the court considered the judgment error does not appear. The reasons given in the majority opinion in this case in support of the presumption that this judgment is without error may have applied to the similar facts presented in cause No. 1449 with equal force, with the single exception noticed. As I considered, in that cause, all the questions raised by the facts in this record, and concluded that such facts were not sufficient to justify a reversal of the judgment in that case, and as the majority of the court has in this case considered such questions under the same facts but presented in this record, and also seems to have concluded no error appeared therefrom, I am of opinion that under the stipulation in question the court to dispose of all the questions in this case, in accordance with the disposition made of them in the former case, and cause this case to abide the court's judgment in the former case, is required to order this judgment affirmed. Otherwise, the parties to an appeal may stipulate what law this court must follow in rendering its decisions. See *Allen* v. *State,* 14 Ariz. 458, 465, 44 L. R. A. (N. S.) 468, 130 Pac. 1114.

Either an appeal has presented a cause for consideration by this court, which requires a decision of the questions presented by the record, or the stipulation is such as to hold the appeal in abeyance pending the decision in another case, and upon the final disposition of that other case the parties in their private capacity agreed to be bound. The court is not a party to such stipulation, nor will such stipulation, in my opinion, control the decision of a cause as recognized in the Allen case, *supra.* It may have, and probably does have, the effect as between the parties, of estopping them from enforcing the judgment affirmed until final determination of

the former case, but that is another question not here presented.

If no reversible error is shown on the record presented to this court, this court has no authority to reverse the judgment, and a stipulation filed, having for its purpose the control of the decisions of this court, cannot confer the authority, nor direct the decision this court should make. A stipulation cannot confer jurisdiction on the court, nor control the manner of exercising the jurisdiction acquired in a regular manner. Hence I dissent from the decision reversing the judgment for the reasons stated by the majority in their opinion.

I am of the opinion that the record contains no reversible error, and that the judgment appealed from should lawfully be affirmed. Otherwise the very purpose of the stipulation, viz., "that time, trouble and expense to both parties may be saved," is nullified by this court, and the time, trouble and expense of another trial is cast upon the parties.

Upon the question of power of legislature to make the killing of stock by railway train *prima facie* evidence of negligence, see note in 32 **L. R. A. (N. S.) 227.**